**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                              )
UNITED STATES OF AMERICA,     )
                              )
        v.                    ) Criminal Action No. 09-358 (EGS)
                              )
KEDRICK BROWN,                )
                              )
        Defendant.            )
                              )
```

**MEMORANDUM OPINION**

Pending before the court is defendant Kedrick Brown's
motion to vacate, set aside, or correct his sentence under 28
U.S.C. § 2255 in light of the Supreme Court's decisions in
*Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Welch v.
United States*, 136 S. Ct. 1257 (2016). Upon consideration of Mr.
Brown's motion, the response and reply thereto, the relevant
law, and for the reasons discussed below, the Court **GRANTS** Mr.
Brown's motion and will schedule a resentencing.

## I.  **Background**

On March 2, 2010, Mr. Brown pleaded guilty to one count of
possession of a firearm by a prior convicted felon, in violation
of 18 U.S.C. § 922(g)(1). Plea Agreement, ECF No. 18. Generally
a defendant convicted of a violation of 18 U.S.C. § 922(g) is
subject to a maximum of 10 years imprisonment, 18 U.S.C. §
924(a)(2), but under the Armed Career Criminal Act ("ACCA"), a
defendant convicted of a violation of 18 U.S.C. § 922(g) is

subject to a mandatory minimum of 15 years imprisonment as an armed career criminal if the sentencing court determines that the defendant has three prior convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). Based on three prior convictions—two "serious drug offense" convictions in the District of Columbia, and one conviction in North Carolina for assault with a deadly weapon with intent to kill ("AWDWIK") under N.C. Gen. Stat. § 14-32(c), Presentence Investigation Report ("PSR"), ECF No. 22 ¶¶ 25-26, 28—at his sentencing on July 29, 2010 the Court accepted the agreement of the parties that Mr. Brown was an armed career criminal and thus subject to a mandatory minimum of 15 years imprisonment. Sentencing Hrg. Tr., ECF No. 40 at 3:3-7, 5:15-20, 8:9-13, 12:16-19. The Court sentenced him to that mandatory minimum term. *Id.* at 8:9-13; Judgment, ECF No. 30. On August 2, 2010, Mr. Brown filed a notice of appeal, Notice of Appeal, ECF No. 28, and on April 19, 2011, the D.C. Circuit dismissed Mr. Brown's appeal. Order, ECF No. 35.

ACCA defines a "violent felony" as any felony that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, [or] involves use of explosives"; or (3) "otherwise involves conduct that presents a serious potential

2

risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). "These are known respectively as the 'elements clause,' the 'enumerated clause,' and the 'residual clause.'" *United States v. Booker*, Nos. 04-49, 16-1107, 2017 WL 829094, at *2 (D.D.C. Mar. 2, 2017). In *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (hereinafter "*Johnson* (2015)"), the Supreme Court held that the residual clause is unconstitutionally vague and violates due process. The Supreme Court then held in *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) that the holding in *Johnson* (2015) announced a new, substantive constitutional rule that applied retroactively to cases on collateral review. On June 2, 2016, the Chief Judge for the United States District Court for the District of Columbia issued a Standing Order appointing "the Office of the Federal Public Defender for the District of Columbia to represent any defendant previously determined to have been entitled to appointment of counsel, or who is now indigent, to determine whether that defendant may qualify to seek to vacate a conviction or to seek a reduction of sentence and to present any motions to vacate a conviction and/or for reduction of sentence in accordance with *Johnson* [(2015)] and *Welch*."

Pursuant to the procedures set forth in that Standing Order, on June 20, 2016 Mr. Brown, through the Federal Public

3

Defender, filed an abridged § 2255 motion—his first—to vacate, set aside, or correct his sentence on the basis of *Johnson* (2015), *see* Def.'s Abridged Mot., ECF No. 41, and on October 26, 2016 he filed a supplemental motion fully briefing the issues presented in the earlier-filed abridged motion. *See* Def.'s Suppl. Mot., ECF No. 43. On December 30, 2016 the government filed its opposition to Mr. Brown's § 2255 motion, *see* Gov't's Opp., ECF No. 45, and on February 16, 2017 Mr. Brown filed his reply. *See* Def.'s Reply, ECF No. 50. Mr. Brown's § 2255 motion is now ripe and ready for the Court's adjudication.

## II. Analysis

A federal prisoner may file a motion to vacate, set aside, or correct a sentence that "was imposed in violation of the Constitution or laws of the United States . . . [or] was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Mr. Brown argues that he no longer qualifies as an armed career criminal because his prior conviction for North Carolina AWDWIK no longer qualifies as a "violent felony." Def.'s Suppl. Mot., ECF No. 43 at 2. That is because, Mr. Johnson argues, the far-reaching residual clause—which almost certainly would have categorized North Carolina AWDWIK as a "violent felony"—no longer applies after *Johnson* (2015), and North Carolina AWDWIK does not qualify

4

as a "violent felony" under ACCA's still-valid enumerated and elements clauses. *Id.* With only two remaining ACCA predicate convictions—the two District of Columbia drug offenses that qualify as "serious drug offenses"—Mr. Brown asserts that he can no longer be deemed an armed career criminal. *Id.* at 7-8; *see* 18 U.S.C. § 924(e)(1) (requiring *three* prior "violent felony" or "serious drug offense" convictions). If Mr. Brown is no longer an armed career criminal, then his current 15-year term of imprisonment is in excess of the applicable 10-year statutory maximum imposed by 18 U.S.C. § 924(a)(2). *See* Def.'s Suppl. Mot., ECF No. 43 at 6. If the Court agrees with Mr. Brown, it "shall . . . resentence him." 28 U.S.C. § 2255(b).

In response to Mr. Brown, the government argues that this Court should not even reach the merits of his § 2255 claim because, the government maintains, Mr. Brown's § 2255 claim is untimely, Gov't's Opp., ECF No. 45 at 8-10, and that claim has been procedurally defaulted. *Id.* at 10-12. If the Court does reach the merits, the government argues that North Carolina AWDWIK is a "violent felony" under ACCA's still-valid elements clause, so Mr. Brown remains an armed career criminal subject to ACCA's 15-year mandatory minimum sentence. *Id.* at 12-14.

The Court will first address the government's statute of limitations and procedural default arguments. Finding those

arguments unavailing, the Court will proceed to a consideration of the merits of Mr. Brown's § 2255 claim. For the reasons discussed below, the Court ultimately determines that Mr. Brown is entitled to the relief that he seeks.

## A.    Statute of Limitations

There is a one-year statute of limitations applicable to § 2255 motions. 28 U.S.C. § 2255(f). The limitation period runs from the latest of four statutorily-specified dates, including, as relevant here, "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3). The government concedes that "*Johnson* (2015) triggered the exception to the one-year statute of limitations set forth in 28 U.S.C. § 2255(f)(3)," but it argues that Mr. Brown "has not shown that the claim in his § 2255 motion is in fact predicated on *Johnson* (2015)." Gov't's Opp., ECF No. 45 at 8-9. Instead of being based on *Johnson* (2015), the government maintains that the claim in Mr. Brown's § 2255 motion is predicated on *Curtis Johnson v. United States*, 559 U.S. 133 (2010) (hereinafter "*Johnson* (2010)") and is thus untimely. *Id.* at 9-10. In *Johnson* (2010), the Supreme Court examined ACCA's elements clause—not the residual clause that was at issue in

6

*Johnson* (2015)—and held that in the elements clause "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. The government makes two arguments to support its view that Mr. Brown's motion is based on *Johnson* (2010), not *Johnson* (2015), and is thus barred by § 2255(f)'s one-year limitation period. Neither argument is persuasive.

First, the government argues that Mr. Brown has the burden of showing that this Court relied upon ACCA's residual clause, rather than the elements clause, when it determined that his prior conviction for North Carolina AWDWIK qualified as an ACCA "violent felony." Gov't's Opp., ECF No. 45 at 9. The government's theory seems to be that if Mr. Brown does not carry that burden, then the Court must conclude that it did not rely upon the residual clause and thus must conclude that Mr. Brown is not asserting a claim based on the ruling in *Johnson* (2015) that the residual clause is unconstitutionally vague. *See id.*

Although two panels of the Eleventh Circuit have suggested that it is the petitioner's burden to establish that the sentencing court relied upon the residual clause, *see In re Moore*, 830 F.3d 1268, 1273 (11th Cir. 2016); *In re Hires*, 825 F.3d 1297, 1299 (11th Cir. 2016), a "subsequent panel of the Eleventh Circuit and numerous district courts . . . have

7

rejected that same argument." *Booker*, 2017 WL 829094, at *4

(citing *In re Chance*, 831 F.3d 1335, 1340-41 (11th Cir. 2016);

*United States v. Britto*, No. 04-143, 2017 WL 515007, at *1-2

(N.D. Okla. Feb. 8, 2017); *United States v. Mims*, Nos. 05-20079-

01, 16-2332, 2017 WL 477091, at *3 (D. Kan. Feb. 6, 2017);

*Shabazz v. United States*, No. 16-1083, 2017 WL 27394, at *5 (D.

Conn. Jan. 3, 2017); *Diaz v. United States*, Nos. 16-323, 11-381,

2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016)). Thus, a

majority of courts that have considered the issue "have held

that—when unclear on which ACCA clause the sentencing judge

rested a predicate conviction—the petitioner's burden is to

show only that the sentencing judge may have used the residual

clause." *See United States v. Winston*, No. 01-79, 2016 WL

4940211, at *6 (W.D. Va. Sept. 16, 2016) (collecting cases),

*vacated on other grounds*, 850 F.3d 677 (4th Cir. 2017). This

reduced burden makes sense for a number of reasons, including

the fact that there was no practical reason for judges to

identify whether they were relying upon the elements or residual

clause prior to June 26, 2015, when the Supreme Court decided in

*Johnson* (2015) that the residual clause was void for vagueness,

because "[p]rior convictions that were not violent felonies

under the elements clause often fell under the residual clause."

*Booker*, 2017 WL 829094, at *3 (citing *United States v. Redrick*,

8

841 F.3d 478, 480 (D.C. Cir. 2016)). Accordingly, this Court adopts the majority position taken by courts that have addressed this issue and only requires that Mr. Brown demonstrate that this Court at sentencing *may* have relied upon the residual clause. Mr. Brown has met that burden. *See* Def.'s Reply, ECF No. 50 at 7 (explaining that "[t]he record is certainly unclear in Mr. Brown's case").

Second, the government argues that the claim in Mr. Brown's § 2255 motion is grounded in *Johnson* (2010) rather than *Johnson* (2015) because the "bulk of [Mr. Brown's] motion is devoted to arguing that AWDWIK does not qualify as a violent felony under *the elements clause* because it can be committed without the use of violent physical force as defined in *Johnson* (2010)." Gov't's Opp., ECF No. 45 at 10. Because Mr. Brown's argument relies on precedent "over a year old," the government asserts that Mr. Brown's claim is untimely under § 2255(f). *Id.*

But, as other courts have adequately explained, even if an argument "engages with the [*Johnson* (2010)] holding, the availability of that argument . . . is wholly a product of the new rule announced in [*Johnson* (2015)]." *Shabazz*, 2017 WL 27394, at *6. Before the new rule announced in *Johnson* (2015), Mr. Brown "would not have had a viable challenge to his predicate [North Carolina AWDWIK] conviction[ ] because the [r]esidual

9

clause would have picked up wherever the [e]lements clause left off." *Id.* In other words, because Mr. Brown's North Carolina AWDWIK conviction almost certainly would have qualified as an ACCA predicate under the residual clause, it "is only as a result of [*Johnson* (2015)'s] voiding of the residual clause that [Mr. Brown] could reasonably argue" that North Carolina AWDWIK is not a "violent felony" under the still-valid elements clause and thus "argue that he is no longer eligible for the ACCA enhancement." *Diaz*, 2016 WL 4524785, at *5 (internal quotation marks omitted). That Mr. Brown necessarily relies on current precedent, including *Johnson* (2010), interpreting ACCA and the elements clause to demonstrate that his North Carolina AWDWIK conviction is not a "violent felony" under the elements clause thus "does not convert his *Johnson* [(2015)] motion into a habeas motion based on older cases." *Booker*, 2017 WL 829094, at *4.

Thus, contrary to the government's arguments otherwise, Mr. Brown's § 2255 motion is predicated on *Johnson* (2015) and, accordingly, that motion is timely.

## B. Procedural Default

"The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir.

10

2008). The government argues that Mr. Brown "never argued that the ACCA's residual clause was unconstitutionally vague or that AWDWIK did not qualify as a violent felony under the elements clause," Gov't's Opp., ECF No. 45 at 10, and that he cannot establish the cause and prejudice required to excuse his failure to make these arguments on direct appeal. *Id.* at 10-12.

The government's procedural default argument is unavailing because Mr. Brown has demonstrated both cause and prejudice to excuse any default. "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim . . . ." *Reed v. Ross*, 468 U.S. 1, 16 (1984). Well before Mr. Brown was sentenced on July 29, 2010, the Supreme Court, in *James v. United States*, 550 U.S. 192 (2007), had already "rejected arguments made in dissent that the residual clause was void for vagueness." *Redrick*, 841 F.3d at 481 n.4. Thus, at the time of Mr. Brown's sentencing and on his direct appeal "it is fair to say that no one . . . could reasonably have anticipated *Johnson* [(2015)]," *id.* at 480, and, consequently, "[u]ntil the Supreme Court announced its new rule in *Johnson* [(2015)], [Mr. Brown] did not have a reasonable basis upon which to challenge the constitutionality of ACCA's residual clause." *Booker*, 2017 WL 829094, at *5 (internal quotation marks omitted). Without the

11

availability of the basis upon which to challenge the
constitutionality of the broad-sweeping residual clause, *see
Redrick*, 841 F.3d at 480, Mr. Johnson would have had no reason
to argue that his North Carolina AWDWIK conviction was not a
"violent felony" under the elements clause. *See Shabazz*, 2017 WL
27394, at \*6. Thus it would have been futile for Mr. Brown to
have argued on direct appeal that "ACCA's residual clause was
unconstitutionally vague" and that "AWDWIK did not qualify as a
violent felony under the elements clause." *See* Gov't's Opp., ECF
No. 45 at 10. Because of this futility, Mr. Brown has
demonstrated cause.

Mr. Brown has also demonstrated prejudice. To establish
prejudice, Mr. Brown must demonstrate that "there is a
reasonable probability that, but for the errors, the result of
the proceeding would have been different." *United States v.
Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (internal
quotation marks and alteration omitted). "[T]he possibility of a
sentence reduction if [Mr. Brown] is no longer ACCA-eligible
establishes prejudice." *United States v. Cruz*, No. 05-30044,
2017 WL 603176, at \*1 (D. Mass. Feb. 14, 2017); *see also United
States v. Bryant*, No. 12-62, 2017 WL 635498, at \*5 (W.D. Va.
Feb. 15, 2017) (explaining that an "alleged error" in sentencing
is an "actual and substantial disadvantage sufficient to

12

establish prejudice"). Mr. Brown was sentenced to 15 years imprisonment upon this Court's finding that he was an armed career criminal. Def.'s Suppl. Mot., ECF No. 43 at 3. If the Court finds that, in light of *Johnson* (2015), Mr. Brown can no longer be deemed an armed career criminal, he will be subject to a maximum of 10 years imprisonment. *Id*. The possibility that Mr. Brown's sentence will be reduced by at least five years if this Court concludes that North Carolina AWDWIK is not a "violent felony" and, consequently, concludes that he is no longer an armed career criminal establishes prejudice.

Having concluded that Mr. Brown's § 2255 motion is timely and that he has demonstrated cause and prejudice sufficient to excuse any procedural default, the Court will proceed to the merits of his § 2255 claim.

## C. Merits of Mr. Brown's § 2255 Motion

To determine whether a prior conviction under a state statute qualifies as a "violent felony" under ACCA, "courts use what has become known as the 'categorical approach.'" *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). This approach requires a court to "ask simply whether the *elements* of the prior crime meet [ACCA's] definitions of a violent felony." *Redrick*, 841 F.3d at 482. "If a prior conviction is based on a statute that sweeps more broadly than this federal definition .

13

. . such a conviction cannot qualify as a violent felony under the [elements] clause." *Id.* When a prior conviction statute is "divisible" such that it lists alternative elements that, in effect, create several different crimes, a court is "to employ the 'modified categorical approach' to determine which alternative crime the defendant committed." *Id.* This modified categorical approach permits a court to assess "'a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of.'" *Id.* (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)). The modified categorical approach is "simply a 'tool' to implement the categorical approach, not an exception to the elements-based approach." *Id.* (quoting *Descamps*, 133 S. Ct. at 2285).

North Carolina AWDWIK under N.C. Gen. Stat. § 14-32(c) consists of a single, indivisible set of elements: "(1) an assault; (2) with a deadly weapon; (3) with the intent to kill." *State v. Garris*, 663 S.E.2d 340, 349 (N.C. Ct. App. 2008) (internal quotation marks and alteration omitted). As explained above, following *Johnson* (2015)'s invalidation of the residual clause, a prior conviction only qualifies as an ACCA "violent felony" if it falls within the still-valid enumerated or elements clauses. There is no dispute that North Carolina AWDWIK

does not fall within the offenses captured by the enumerated clause. *See* 18 U.S.C. § 924(e)(2)(B)(ii) (describing burglary, arson, extortion, and use of explosives). The dispute thus narrows to whether North Carolina AWDWIK qualifies as a "violent felony" under the elements clause.

Mr. Brown argues that North Carolina AWDWIK does not qualify as a "violent felony" under the elements clause because it does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." *See* 18 U.S.C. § 924(e)(2)(B)(i). According to Mr. Brown, North Carolina AWDWIK lacks this element for two independent reasons. First, under *Johnson* (2010), for a crime to be a "violent felony" under the elements clause it must require "physical force," which is "'violent force'"—that is, force "'capable of causing physical pain or injury to another person.'" Def.'s Suppl. Mot., ECF No. 43 at 11 (quoting 559 U.S. at 140). Mr. Brown argues that a defendant can be convicted of North Carolina AWDWIK even in the absence of the "violent force" required by *Johnson* (2010), such as when a defendant uses poison in an attempt to kill someone. *Id.* at 13 (citing *State v. Jones*, 283 S.E.2d 546, 547 (N.C. Ct. App. 1981)). Second, Mr. Brown argues that in order to be a "violent felony" under the elements clause, a crime must require the intentional or purposeful "use,

attempted use, or threatened use" of physical force, not just the reckless or negligent "use, attempted use, or threatened use" of physical force. Def.'s Reply, ECF No. 50 at 27-35. Because a conviction for North Carolina AWDWIK can be sustained upon a finding of just culpable or criminal negligence, such a conviction, Mr. Brown maintains, cannot qualify as a "violent felony" conviction. *Id.* at 35-37.[1]

The government argues that Mr. Brown's first argument—that North Carolina AWDWIK cannot be a "violent felony" under the elements clause because it does not require the "violent force" described by the Supreme Court in *Johnson* (2010)—is foreclosed by *United States v. Redrick*, 841 F.3d 478 (D.C. Cir. 2016). Gov't's Opp., ECF No. 45 at 12-13. There, the D.C. Circuit concluded that Maryland armed robbery—a crime that requires "the *use* of a dangerous or deadly weapon"—"contains 'as an

---

[1] Mr. Brown raised this mens rea argument for the first time in his reply. "Generally, new arguments raised for the first time in reply may be disregarded due to concern that the opposing party would lose an opportunity to respond." *Caul v. U.S. Capitol Police*, No. 15-1243, 2016 WL 2962194, at *12 n.6 (D.D.C. May 19, 2016). The Court will not disregard the argument raised for the first time in reply here because Mr. Brown indicated that he only became aware of the mens rea argument after his supplemental motion was filed; he notified the government of his new argument; and he made clear that he does not oppose any request by the government to respond to the new argument. *See* Def.'s Reply, ECF No. 50 at 24 n.9. Accordingly, and particularly because of the notice provided to the government, the Court is confident that the government has not unfairly lost an opportunity to respond and, thus, will not disregard the mens rea argument made for the first time in reply.

element the use, attempted use, or threatened use of physical force against the person of another,'" and, accordingly, counts as an ACCA "violent felony." 841 F.3d at 484. The court explained that Maryland armed robbery's "element of 'use' of a dangerous or deadly weapon supplies at minimum a 'threat' of physical force against the person of another," and explained that "because the means employed is a 'dangerous or deadly weapon,' the required degree of force—that is, '*violent force*'—is present." *Id.*

At first blush, it does seem like the government is correct that *Redrick* forecloses the conclusion that North Carolina AWDWIK does not require the "violent force" described by *Johnson* (2010). It would seem to be the case that North Carolina AWDWIK's element of assault "with a deadly weapon," just like Maryland armed robbery's element of use of a "dangerous or deadly weapon," includes "the required degree of force—that is, '*violent* force.'" *See id.*

But that first impression is deceiving. After explaining that Maryland armed robbery's element of use of a "dangerous or deadly weapon" includes the "required degree of force" of violent force, the *Redrick* court explained that "[i]n that respect our case is different than a recent Ninth Circuit decision, *United States v. Parnell*, 818 F.3d 974 (9th Cir.

17

2016), holding that a prior Massachusetts armed robbery conviction was not a violent felony under the [elements] clause." *Id.* The court explained that the cases were different because "Massachusetts armed robbery does not require 'use' of the dangerous or deadly weapon: the victim does not even need to be aware of the presence of the weapon." *Id.* In drawing this distinction, the *Redrick* court thus indicated that if a conviction for a crime that has an element involving a "dangerous or deadly weapon" can be obtained even in the absence of the victim's awareness of the weapon, then that crime does not necessarily require the "violent force" that *Johnson* (2010) requires of a "violent felony" under the elements clause.

A defendant can be convicted of North Carolina AWDWIK even when the victim is not aware of the presence of the weapon: Mr. Brown points to a case where a defendant was convicted of North Carolina AWDWIK based on that defendant's attempts to kill his wife by secretly poisoning her. Def.'s Suppl. Mot., ECF No. 43 at 13 (citing *State v. Jones*, 283 S.E.2d 546, 547 (N.C. Ct. App. 1981)). Poisoning is the quintessential sort of criminal activity where "the victim does not even need to be aware of the presence of the weapon." *See Redrick*, 841 F.3d at 484. Accordingly, North Carolina AWDWIK does not categorically require "violent force." Consequently, Mr. Brown's North

18

Carolina AWDWIK conviction does not qualify as an ACCA "violent felony."

To be sure, the *Redrick* court did consider and reject the argument "that even if [Maryland armed robbery] includes the dangerous or deadly weapon component as an element, it still sweeps too broadly, because a weapon such as poison, an 'open flame,' or 'lethal bacteria' could be used and those dangerous weapons would not supply the requisite 'physical force against the person of another.'" *Id.* at 484. But neither of the *Redrick* court's bases for rejecting this argument directs this Court to abandon its conclusion that North Carolina AWDWIK, unlike Maryland armed robbery, does not require "violent force" and thus is not a "violent felony."

First, the *Redrick* court stated that it "doubt[ed] that these weapons [referring to poison, an open flame, and lethal bacteria] could be administered without at least some level of physical force" and supported that statement by citing *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014) for the proposition that "poison and other 'indirect' causes of physical harm require common-law 'force.'" *Id.* But this Court does not read the *Redrick* court's statement here as a holding that common-law force meets the *Johnson* (2010) threshold for "violent force" precisely because the Supreme Court explained in

19

*Castleman* that in *Johnson* (2010) the Court "declined to read the common-law meaning of 'force' into ACCA's definition of a 'violent felony.'" 134 S. Ct. at 1410. Thus the Supreme Court in *Castleman* reiterated and reaffirmed—and did not alter—its holding from *Johnson* (2010) that in ACCA "the phrase physical force must mea[n] *violent* force," not common-law force. *Id.* (internal quotation marks omitted) (quoting *Johnson* (2010), 559 U.S. at 140). Accordingly, this Court takes the *Redrick* court's statement that poison and other indirect causes of physical harm "could [not] be administered without at least some level of physical force" as an observation that common-law force is not absent when poison and other indirect causes of harm are used as a crime's "dangerous or deadly weapon" rather than as a holding that in this Circuit common-law force can be equated with *Johnson* (2010)-style "violent force." Understood properly in this manner, the *Redrick* court's statement about "some level of physical force" does not require this Court to conclude that North Carolina AWDWIK—which can be committed through the secret use of poison—is a "violent felony."

Second, the *Redrick* court stated that the hypotheticals concerning poison, an open flame, and lethal bacteria in the context of Maryland armed robbery were "too farfetched" to give it any pause. 841 F.3d at 484-85. The court explained that the

20

Supreme Court "has cautioned against excessive 'legal imagination,'" *id.* (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013)), and thus in "determining whether a state statute qualifies as a violent felony, we focus on 'realistic probabilities,' not 'theoretical possibilities' that Maryland 'would apply its law to conduct that falls outside' the [elements] clause." *Id.* (alterations omitted) (citing *Duenas-Alvarez*, 549 U.S. at 193). Accordingly, because it had been pointed to no Maryland case in which a Maryland armed robbery conviction had actually been obtained based on the use of poison, an open flame, or lethal bacteria, the *Redrick* court would not contemplate concluding that Maryland armed robbery did not require "violent force." *Id.* In the context of North Carolina AWDWIK, however, a conviction based on secret poisoning is hardly a figment of the legal imagination. As Mr. Brown has demonstrated, such a conviction is grounded in a realistic rather than a theoretical possibility: At least one North Carolina AWDWIK conviction has been obtained based on secret poisoning. *See* Def.'s Suppl. Mot., ECF No. 43 at 13 (citing *State v. Jones*, 283 S.E.2d 546, 547 (N.C. Ct. App. 1981)). Thus, under the categorical approach, North Carolina AWDWIK—unlike

Maryland armed robbery—does not require "violent force" and, accordingly, does not qualify as an ACCA "violent felony."

In any event, even if this Court has misunderstood *Redrick*, Mr. Brown's alternative argument—that in order to be a "violent felony" under the elements clause, a crime must require the intentional or purposeful "use, attempted use, or threatened use" of physical force and North Carolina AWDWIK merely requires culpable or criminal negligence—demands the conclusion that North Carolina AWDWIK is not a "violent felony" under the elements clause. In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Supreme Court interpreted 18 U.S.C. § 16, which is in relevant part identical to ACCA's elements clause, and concluded that the "key phrase in § 16(a)—the 'use . . . of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9. Although the Court expressly indicated that it was not deciding whether a crime that merely requires reckless conduct would be sufficient under § 16(a), *id.* at 13, courts have appropriately extended *Leocal* to conclude that a crime must require intentional or purposeful conduct, not just reckless or negligent conduct, to qualify as a "violent felony" under ACCA's elements clause. Indeed, "most decisions to address the question have found that a conviction that requires a mens

22

rea of only recklessness does not satisfy ACCA's [elements] clause." *Bennett v. United States*, Nos. 94-11, 16-251, 2016 WL 3676145, at *3 (D. Me. July 6, 2016) (citing *Parnell*, 818 F.3d at 981 & n.5; *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015); *United States v. Holloway*, 630 F.3d 252, 261-62 (1st Cir. 2011); *United States v. McMurray*, 653 F.3d 367, 374-75 (6th Cir. 2011); *Cutshaw v. United States*, Nos. 09-70, 16-106, 2016 WL 3212269, at *2 (E.D. Tenn. June 7, 2016)). This Court adopts that prevailing approach: A crime for which a conviction can be obtained based on a showing of mere reckless or negligent conduct cannot be a "violent felony" under ACCA's elements clause.

The Supreme Court's recent ruling in *Voisine v. United States*, 136 S. Ct. 2272 (2016) does not require a contrary conclusion. There, the Court considered a statute that prohibits any person convicted of a "misdemeanor crime of domestic violence" from possessing a firearm. 136 S. Ct. at 2276 (citing 18 U.S.C. § 922(g)(9)). A "misdemeanor crime of domestic violence" includes any misdemeanor that "'has, as an element, the use or attempted use of physical force." *Id.* (quoting 18 U.S.C. § 921(a)(33)(A)(ii)). The question before the Court was "whether misdemeanor assault convictions for reckless (as contrasted to knowing or intentional) conduct trigger the

23

statutory firearms ban." *Id.* The Court held that they do, as it concluded that offenses requiring only a recklessness mens rea qualify as "misdemeanor crimes of domestic violence." *Id.*

Even though the statutory language in § 921(a)(33)(A)(ii) at issue in *Voisine* largely mimics that of ACCA's elements clause, *compare* ACCA, 18 U.S.C. § 924(e)(2)(B)(i) ("has as an element the use, attempted use, or threatened use of physical force against the person of another"), *with* 18 U.S.C. § 921(a)(33)(A)(ii) ("has, as an element, the use or attempted use of physical force"), this Court follows the lead of various other District Courts in concluding that that linguistic similarity should not mean that recklessness is a sufficient mens rea for purposes of ACCA's elements clause. *See, e.g.*, *United States v. Lattanzio*, No. 93-30017, 2017 WL 519241, at *5-6 (D. Mass. Feb. 8, 2017); *United States v. Sabetta*, Nos. 00-135, 00-142, 03-69, 04-50, 06-45, 12-8, 13-36, 2016 WL 6157454, at *8-9 (D.R.I. Oct. 24, 2016); *Bennett*, 2016 WL 3676145, at *3-4. Among the various well-reasoned justifications those courts have already articulated for not understanding *Voisine* to mean that recklessness is a sufficient mens rea in the context of ACCA's elements clause, the Court finds particularly persuasive the fact that the "Supreme Court had previously defined terms that are used identically in the ACCA and the Misdemeanor

24

Domestic Violence Act to have different meanings." *Sabetta*, 2016
WL 6157454, at *9. As explained above, in *Johnson* (2010) the
Court held that the term "physical force" in ACCA means "*violent
force*—that is, force capable of causing physical pain or injury
to another person," 559 U.S. at 140, but in *Castleman* the Court
held that "Congress incorporated the common-law meaning of
'force'—namely, offensive touching—in § 921(a)(33)(A)'s
definition of a 'misdemeanor crime of domestic violence.'" 134
S. Ct. at 1410. The primary reason for the difference between
the holdings in *Johnson* (2010) and *Castleman* seems to be that
the Supreme Court has concluded that "when Congress defines a
misdemeanor, it intends a lower bar for culpability than when it
defines a felony, even when it uses some of the same words to
describe both types of offenses." *Sabetta*, 2016 WL 6157454, at
*9; *see also Bennett*, 2016 WL 3676145, at *3 ("[T]he logic and
language of the Supreme Court's 2014 decision in *Castleman* make
clear that the statutory interpretation of § 921(a)(33)([A]) and
§ 924(e)(2)(B)(i) must be undertaken separately."). Thus, "the
lower mens rea sufficient for a predicate *misdemeanor* is not
necessarily sufficient for a violent *felony*." *Sabetta*, 2016 WL
6157454, at *9. Accordingly, even after *Voisine*, this Court
concludes that the prevailing position that it has adopted—that

25

a crime that requires a mens rea of only recklessness or less does not satisfy ACCA's elements clause—should not be altered.[2]

Because a North Carolina AWDWIK conviction can be obtained by a mere showing of culpable or criminal negligence, it does not qualify as a "violent felony" under ACCA's elements clause. In *State v. Jones*, 538 S.E.2d 917 (N.C. 2000), the North Carolina Supreme Court explained that "culpable or criminal negligence may be used to satisfy the intent requisites for certain dangerous felonies," including North Carolina AWDWIK. 538 S.E.2d at 923. It further explained that "culpable or criminal negligence" is defined as "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Id.* (internal quotation marks omitted). Because the mens rea required for a North Carolina AWDWIK conviction is less than intent or

---

[2] The Eighth Circuit, in *United States v. Fogg*, 836 F.3d 951 (8th Cir. 2016), concluded that, after *Voisine*, reckless conduct "constitutes a 'use' of force under the ACCA because the [elements] clauses in 18 U.S.C. § 921(a)(33)(A)(ii) and the ACCA both define qualifying predicate offenses as those involving the 'use . . . of physical force' against another." 836 F.3d at 956. This Court does not adopt the *Fogg* view because, as already explained, sheer linguistic similarity between the elements clauses of § 921(a)(33)(A)(ii) and ACCA does not adequately account for the appropriately differing treatment of those two similarly worded statutes that has been underscored by the Supreme Court's disparate holdings in *Johnson* (2010) and *Castleman*.

26

purpose—indeed, it is less than even recklessness, *see United States v. Peterson*, 629 F.3d 432, 437 (4th Cir. 2011) ("'Thoughtless disregard,' . . . is less than 'conscious disregard,' which is the definition of recklessness under the Model Penal Code.")—that crime is not a "violent felony" under ACCA's elements clause.

This Court thus parts ways with the District Court in *Jackson v. United States*, Nos. 07-110, 16-353, 2017 WL 455395 (E.D.N.C. Feb. 2, 2017), which held that because North Carolina AWDWIK has the element of "specific intent to kill," that crime's mens rea is sufficient for purposes of ACCA's elements clause to qualify it as a "violent felony." 2017 WL 455395, at *3. In a case decided by the same District Court the same day as *Jackson* that similarly concluded that North Carolina assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI") can qualify as an ACCA "violent felony" because of its element of specific intent, *Goins v. United States*, Nos. 10-107, 16-95, 2017 WL 455400, at *3 (E.D.N.C. Feb. 2, 2017), the District Court provided three reasons as to why it was of the view that the North Carolina Supreme Court's statements in *Jones* were "inapposite": (1) the statement in *Jones* concerning culpable or criminal negligence's applicability to North Carolina AWDWIK and AWDWIKISI was dicta; (2) North

27

Carolina Supreme Court cases prior to *Jones* state unequivocally that AWDWIK and AWDWIKISI require specific intent to kill rather than carelessness, culpable negligence, or recklessness; and (3) in *Jones*, the North Carolina Supreme Court qualified its earlier statement in dicta by stating more specifically that AWDWIK and AWDWIKISI "have required *actual intent* on the part of the perpetrator." *Id.* at *4 (internal quotation marks omitted). Thus, the *Jackson-Goins* District Court is of the view that "*Jones* does not detract from the conclusion that [AWDWIK and] AWDWIKISI meet[ ] the mens rea requirements for a violent felony under the ACCA." *Id.*

This Court respectfully disagrees. First, that the North Carolina Supreme Court in *Jones* said in dicta that a North Carolina AWDWIK conviction requires only culpable or criminal negligence is of little moment, as dicta can be authoritative. *Cf. United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("[C]arefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative.") (internal quotation marks omitted). Second, in light of the North Carolina Supreme Court's authoritative statement in *Jones*, this Court will not understand North Carolina AWDWIK's mens rea requirement in the manner it may have been understood prior to *Jones*. And third, the North Carolina

28

Supreme Court in *Jones* did not "qualif[y] its earlier statement in dicta." *See Goins*, 2017 WL 455400, at \*4. Instead, when the *Jones* Court stated that North Carolina AWDWIK "required actual intent on the part of the perpetrator," it made clear that that greater mens rea of actual intent is required *only* when AWDWIK is serving as an underlying felony for purposes of the felony murder rule. 538 S.E.2d at 925 ("Although a showing of culpable negligence can satisfy the intent requirement for certain aforementioned crimes, [including AWDWIK,] it has not formed the basis of intent for a first-degree murder conviction."). Thus, when North Carolina AWDWIK is charged as a stand-alone crime, a showing of culpable or criminal negligence is all that is required. Accordingly, North Carolina AWDWIK is not a "violent felony" under ACCA's elements clause.

## III. Conclusion

Because North Carolina AWDWIK is not a "violent felony" under ACCA, Mr. Brown no longer has the three prior convictions necessary for him to be designated an armed career criminal under ACCA. Accordingly, the 15-year term of imprisonment that he is currently serving pursuant to ACCA is in excess of the now-applicable statutory maximum of 10 years. Mr. Brown has thus demonstrated that he is serving a sentence that is in excess of the maximum authorized by law. Accordingly, the Court **GRANTS** Mr.

29

Brown's § 2255 motion to correct his sentence and will schedule

his resentencing forthwith. An appropriate Order accompanies

this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**            United States District Judge**
**            April 12, 2017**